# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STUART A. SARSHIK,

    Plaintiff,

        v.                                                      Civil No. 11-927 WJ/ACT

CORRECTIONAL MEDICAL SERVICES, INC.,

    Defendant.

## **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE CERTAIN PARAGRAPHS IN THE COMPLAINT**

THIS MATTER comes before the Court upon Defendant's Motion to Strike Certain Paragraphs in the Complaint, filed July 27, 2011 **(Doc. 5)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and, therefore, is denied.

## Background

Defendant Correctional Medical Services, Inc. ("CMS") provides healthcare services for prison facilities. The basis for the complaint is Dr. Sarshik's ("Plaintiff's") termination from his position as medical doctor after being employed there for two months. While employed at CMS, Plaintiff reported to CMS's Chief Medical Officer, Jack Davidson, M.D., whose office is located in St. Louis, Missouri. As a result, Plaintiff had little contact with Dr. Davidson. Plaintiff's immediate supervisor was Dr. Patrick Arnold, M.D., CMS's Medical Director. Dr. Arnold was responsible for supervising physicians working at the twelve correctional facilities which are run by the New Mexico Corrections Department ("NMCD") and which have contracts with CMS.

According to the complaint, Defendant discharged Plaintiff was because he complained

about Dr. Arnold's incompetence as a medical doctor and supervisor. Plaintiff asserts that Dr. Arnold failed his medical board examinations, and that Dr. Arnold's aversion to ordering surgical procedures reduces CMS's expenses contributed to Defendant's corporate profits. Plaintiff disagreed with treatment decisions Dr. Arnold made on several patients who had urgent medical problems, largely because Plaintiff believed that surgery was required. Plaintiff contends that proceeding on Dr. Arnold's orders would have caused these patients to receive grossly inadequate medical care in violation of both his ethical and legal duties. In several instances when Dr. Sarshik overrode Dr. Arnold's orders in order to provide a patient with surgical treatment, Dr. Arnold made it clear that he was upset and displeased with him for doing so.

Dr. Sarshik complained on at least two occasions to Dr. Davidson about what he believed to be Dr. Arnold's incompetence and about the fact that CMS was failing to provide adequate healthcare to prisoners. Plaintiff states that no investigation was undertaken. Instead, Dr. Davidson told Plaintiff that he was here "to learn; not to change things." Compl., ¶ 93.

Dr. Sarshik's final complaint involved a prisoner-patient with a severe bladder tumor who had been complaining to CMS's physicians about pain and discomfort for approximately three years, and who had been urinating blood for that period of time. Compl., ¶¶ 105-118. The complaint alleges that Dr. Arnold had not only denied the patient the necessary surgical treatment, but also ordered that the patient's treating physician, CMS physician-employee Leopold Raushbaum, M.D., refrain from referring the patient for surgery. As a result of not having timely surgical treatment, the patient's tumor grew so large that it invaded the bladder wall and led to perforation at the first attempt to diagnose and treat it in early April of 2011. The patient now needs to have his entire bladder surgically removed, and will suffer the

2

consequences of delayed treatment, including probable premature death.

Plaintiff, disturbed about the lack of adequate medical treatment for this patient, discussed the issue with several of CMS's managers, including William Steiger, CMS's Director of Operations in New Mexico.  On or about April 11, 2011, Dr. Sarshik sent an email and made a telephone call  to CMS's in-house legal counsel, Maya Patel, Esq., to inquire about filing a formal complaint.  Ms. Patel did not respond to either the email of the phone call.  On or about April 13, 2011, CMS terminated Dr. Sarshik's employment.  Plaintiff was provided with notice of termination during a teleconference with Dr. Davidson and Mr. Steiger.  When Plaintiff asked for the reason he was being terminated, Dr. Davidson again stated that Plaintiff was "hired to learn; not to change things." Compl., ¶ 128.

Plaintiff contends that he was terminated because of his many complaints about Dr. Arnold's incompetence and the failure to provide adequate health care to numerous prisoners in the custody of NMCD, as well as the fact that CMS was denying constitutionally guaranteed medical care to prisoners.   The complaint alleges wrongful discharge (Count I); violations of the New Mexico Whistleblower Protection Act, NMSA 1978, § 10-16C-2.C (the "Whistleblower Act") (Count II); prima facie tort (Count III); breach of contract (Count IV); and intentional infliction of emotional distress (Count V).

## Discussion

A motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Symbol Techs., Inc. v. Aruba Networks, Inc*., 609 F. Supp.2d 353, 359 (D. Del. 2009).  Rule 12(f) of the Federal Rules of Civil Procedure provides that a party may move the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a

pleading.  Fed.R.Civ.P. 12(f).[1]  Rule 12(f) motions are disfavored and rarely granted "because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic. . . ." *Salazar v. Furrs, Inc.*, 629 F.Supp. 1403, 1411 (D. N.M. 1986); Wright & Miller, 5C *Federal Practice and Procedure: Civil 3d* §1380 at 394 (2004).  A court will usually deny a motion to strike "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Nwakpuda v. Falley's, Inc.*, 14 F.Supp.2d 1213, 1215 (D. Kan. 1998).  In addition, if "evidentiary facts are pleaded, and they aid in giving a full understanding of the complaint as a whole, they need not be stricken." *Id*. at 1215-16.

Defendant moves to strike paragraphs 48-62, 65-67 and 78 of the Complaint on the grounds that they are offensive, immaterial, impertinent, scandalous and serve no legitimate purpose.  Defendant focuses on statements which address Dr. Arnold's competence as doctor and effectiveness as a supervisor, as well as Dr. Arnold's excessive weight at over 300 pounds (Compl., ¶ 50).  With regard to Dr. Arnold's obesity, Plaintiff states that Dr. Arnold's "grossly excessive body mass contributes to his inability to provide adequate medical care" in that he is "either unwilling or unable to stand or bend when examining patients."  Compl., ¶ 56-57.  While Defendant argues that such allegations are extraneous to Plaintiff's claims, the Court agrees with Plaintiff that these statements form part of the factual basis for Plaintiff's claims against Defendant.  Dr. Arnold's alleged incompetence (whether it is due to his failure to keep abreast of

---

[1] "Redundant" facts are those facts "which are wholly foreign to the issue intended to be denied or the needless repetition of material averments." *DirecTV, Inc. v. Weikel*  2005 WL 1243378, 2 (D.N.J.,2005).  "Immaterial" facts have "no essential or important relationship to the averment intended to be denied." *Id.*  "Impertinent" facts refer to "matters applied to facts which do not belong to the matter in question, and which is not necessary to the matter in question." *Id*.  "Scandalous" facts are those which "criminatory of a party referred to in the pleading." *Id*.

developments in his field or an inability to effectively examine his patients because of physical limitations) relates to the reason Plaintiff complained to CMS about Dr. Arnold. Statements in the complaint regarding Dr. Arnold's aversion to ordering surgical procedures are tied directly to Plaintiff's allegations that CMS keeps Dr. Arnold employed in order to provide "relatively cheap labor" for the corporation. Compl., ¶ 66. All of these assertions provide a factual basis for Plaintiff's claim that his discharge had nothing to do with his own incompetence, and that the termination was not based on a legally permissible motive.

The complaint also describes an incident in which Dr. Arnold engaged in an act of public urination in plain sight of Dr. Sarshik and in full view of the "public-at-large." Compl., ¶ 60. Defendant considers this assertion to be highly improper and offensive. However, while the nature of the allegation is obviously less than favorable to Dr. Arnold, the reason for the statement is not gratuitous. This alleged behavior reflects on Dr. Arnold's poor judgment and lack of professionalism—both of which were reasons for Plaintiff's complaints to CMS's managers. Defendant also attempts to deflect any importance given to allegations concerning Dr. Arnold by contending that Dr. Arnold was not the decisionmaker in Plaintiff's termination. Nevertheless, facts about Dr. Arnold form an integral part of the basis for Plaintiff's complaints regarding Dr. Arnold.

As Plaintiff notes, Defendant does not address the infirmities of each of the challenged allegations, but rather groups them categorically as being scandalous, offensive, insulting, immaterial, irrelevant and demeaning. The Court assumes that Defendant means these descriptions apply to all of the challenged allegations. Based on the Court's review of those allegations not separately addressed by Defendant (¶¶ 49, 51, 53, 54, 57, 62, 65, 67 and 78), I find that those allegations are also relevant to at least one of the claims asserted in the complaint.

For example, ¶ 49 states that "Dr. Arnold was not capable of providing patients with adequate medical care." This allegation is certainly relevant to the question of whether the reason for Plaintiff's termination was legitimate, or retaliatory. Similarly, the allegation that Dr. Arnold "is not a board certified physician" (¶ 51) is part of the alleged factual matrix supporting the legitimate reasons for Plaintiff's complaints about Dr. Arnold. Thus, the Court denies the motion to strike any of the allegations that are not specifically addressed in the motion because the Court finds those allegations to be relevant to Plaintiff's claims that he was terminated because he complained to Defendant about Dr. Arnold's inadequate supervision and failure to provide adequate medical care to prisoners.

## Conclusion

In sum, the Court finds and concludes that paragraphs 48-62, 65-67 and 78 of the Complaint are not "offensive, immaterial, impertinent" or "scandalous" under Rule 12(f). Unfortunately for Dr. Arnold, the Federal Rules of Civil Procedure do not ensure that statements in a pleading will not prove to be embarrassing to a party. Nevertheless, I find and conclude that the challenged allegations are material and necessary to a full understanding of the complaint as a whole.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Strike Certain Paragraphs in the Complaint (**Doc. 5**) is hereby DENIED for the above-stated reasons.

_____
UNITED STATES DISTRICT JUDGE

6